**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| **JANET MATRICCIANI,** | |
| **Plaintiff,** | |
| **v.** | |
| | **No. 23-cv-4120** |
| **AMERICAN HOMEOWNER PRESERVATION, INC., JUSTWORKS EMPLOYMENT GROUP, LLC, and JORGE NEWBERY, an individual** | **Judge Jeffrey I. Cummings** |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Janet Matricciani, brings this lawsuit against defendants, American Homeowner Preservation, Inc., Justworks Employment Law Group, and Jorge Newbery, for breach of employment contract and violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* Defendants moved pursuant to Federal Arbitration Act ("FAA"), 28 U.S.C. §§1 *et seq.*, §§3 and 4 to compel arbitration and stay the underlying proceedings pending the completion of the arbitration, or, to dismiss the case entirely pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(3). (Dckt. #16).

1

## I.    BACKGROUND

As the record stands,[1] the Court assumes the following facts in accordance with the appropriate standard of review for consideration.[2]

Plaintiff Janet Matricciani ("Matricciani") is a citizen domiciled in South Carolina, (Dckt. #1 ¶ 2), who was employed as the Chief Operating Officer ("COO") for American Homeowner Preservation, Inc. ("AHP").  (Dckt. #24-1).  Defendant AHP is an entity incorporated in Delaware with a principal place of business in Chicago, Illinois.  (Dckt. #1 ¶3).  The company has, or intends to have, several affiliate businesses, including American Homeowner Preservation Servicing, LLC ("AHP Servicing").  (Dckt. #24-1 ¶I; *see* Dckt. #1 ¶¶8-10; *see also* Dckt. #36).  Defendant Justworks Employment Law Group, LLC, ("Justworks") is a Professional Employer Organization that contracted with AHP Services to provide payroll and other employment management services.  (*Id.* ¶12; Dckt. #16; Dckt. #24 at n.4).  Justworks is wholly owned by Justworks, Inc.  (Dckt. #34).  Justworks, Inc. is a corporation incorporated in Delaware with a principal place of business in New York.  (Dckt. #38; *see also* Dckt. #1 ¶4; Dckt. #12; Dckt. #23).  Finally, defendant Jorge Newbery ("Newbery") is a founder and Chief Executive Officer ("CEO") of AHP.  (Dckt. #1 ¶5).  He also serves as CEO of AHP Servicing.  (*See* Dckt. #24-3 at 7).  Newbery is a natural citizen domiciled in Cook County, Illinois.  (Dckt. #1 ¶5.)

---

[1] The record includes the Complaint (Dckt. #1), the Motion to compel arbitration or dismiss (Dckt. #16), plaintiff's Response (Dckt. #24), defendants' Replies (Dckt. #25; Dckt. #26), Anna Fajkowski's declaration (Dckt. #16-1 at 2–4), the Worksite Employee Acknowledgement ("Worksite Acknowledgment") (Dckt. #16-1 at 6–12), the Executive Employment Agreement ("Employment Agreement") (Dckt. #24-1) and the Amendment thereof (Dckt. #24-2), Janet Matricciani's declaration (Dckt. #24-3 at 1–3), an Affiliated Entities Chart (Dckt. #24-3 at 5), the AHP Servicing Organizational Chart (Dckt. #24-3 at 7), and an August 17, 2022 email from Matricciani to Newbery (Dckt. #24-3 at 9).

[2] For the inquiries into subject matter jurisdiction and venue, the plaintiff's (as the party invoking federal jurisdiction in this district) alleged facts are assumed as true and interpreted in the light most favorable to the plaintiff; for the motion to compel arbitration, the Court evaluates the facts supported by the record in the light most favorable to the plaintiff (as the non-moving party).

On April 20, 2022, Matricciani entered into the Employment Agreement (Dckt. #24-1) with AHP establishing her employment to serve as the COO. (Dckt. #24-1 ¶II 3.2; *see also* Dckt. #1 ¶¶8, 11). Newbery signed the Employment Agreement as CEO of AHP. (Dckt. #24-1 at 16). In its first section, the Employment Agreement stated:

> AHP holds, or expects to hold in the future, the majority equity interests in several businesses with a common mission of raising the homeownership rate for all Americans to 75%. These businesses include AHP Servicing LLC [and eight others].

(Dckt. #24-1 ¶I). The Employment Agreement did not mention arbitration.

The COO position with AHP included "overseeing . . . the leadership of the affiliated companies." (Dckt. #24-1 ¶3.2). Matricciani avers that she was never installed on the board of any affiliate or invited to a board meeting. (Dckt. #24-3 ¶¶5–7).

AHP Servicing contracted with Justworks to provide various administrative services, which included payroll processing and access to certain personnel resources for worksite employees on behalf of AHP Servicing. (Dckt. #16-1 at 2–3, ¶¶3–6). Justworks requested that AHP Servicing's employees set up personal accounts with Justworks and agree to the Worksite Acknowledgment. (*Id.* at ¶¶6–13).

Justworks presented Matricciani with the Worksite Acknowledgment, which she thereafter electronically signed on June 9, 2022. (Dckt. #16-1 at 8). Matricciani understood this document was designed to enable direct deposits into her bank accounts. (Matricciani Decl. ¶11, Dckt. #24-3 at 2).

The Worksite Acknowledgment specifically defines the "Worksite Employer" as "AHP Servicing, LLC." (Dckt. #16-1 ¶1). Plaintiff admits that her wage statements were from AHP Servicing and that her email address lists its domain as "@ahpservicing.com," (Dckt. #24, at

¶34, n. 5; *see* Dckt. #24-3 at 9), yet her signature block indicated that her employer was AHP.

(*See* Dckt. #24-3 at 9).

The Worksite Acknowledgment contains an arbitration provision stating as follows:

> By clicking "I Accept" below, you . . . agree to use binding arbitration as the sole and exclusive means to resolve all disputes that may arise between you and Worksite Employer and/or you and Justworks, including, but not limited to, disputes regarding termination of employment and compensation. You specifically waive and relinquish your right to bring a claim against Worksite Employer and/or Justworks, in a court of law . . . [and] agree that any claim, dispute, and/or controversy that you may have against Worksite Employer . . . or Justworks (or [either entity's] owners, directors, officers, managers, employees, or agents) . . . shall be submitted to and determined exclusively by binding arbitration under the [FAA].

(Dckt. #16-1 at ¶10).

This arbitration provision provides the following regarding its scope:

> Included within the scope of this arbitration agreement are all disputes, whether based in tort, contract, statute (including, but not limited to, any claims brought under the Fair Labor Standards Act or any other similar state or local law or regulation, or claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act or any other similar local, state, or federal law or regulation), equitable law, or otherwise. The only exception to the requirement of binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for unemployment compensation benefits, claims for medical and disability benefits under state workers' compensation law, or other claims that are not subject to arbitration under current law.

*Id.* Absent from the agreement is the delegation of questions of arbitrability to an arbitrator. *See id.*

The Worksite Acknowledgment provided notice that her signature bound her to the agreement. (*See* Dckt. #16-1 at 8 ("By pressing submit, I agree that I have read, understood, and agree to be legally bound by all of the above terms and the applicable terms of the attached

4

exhibits.")). It additionally provided that, "Any agreement contrary to the foregoing must be entered into, in writing, signed by you, the authorized representative of Worksite Employer and the CEO of Justworks. (*Id.*)

On August 9, 2022, AHP—via Newbery in his capacity as CEO—and plaintiff executed an Amendment to the Employment Agreement. (Dckt. #24-2 at 4). This amendment mentioned neither arbitration nor AHP Servicing. (*See id.*).

On March 1, 2023, Newbery announced the termination of Matricciani's employment. (Dckt. #1 ¶22). Matricciani thereafter initiated this lawsuit against AHP, Justworks, and Newbery, alleging in her first count that the defendants breached her Employment Agreement by failing to pay 2022 bonuses, terminating her employment without cause and without providing 90 days' notice wages, and failing to transfer equity in AHP to Plaintiff. (Dckt. #1 at Count I). Plaintiff also asserts that such acts and omissions amount to violations of the Illinois Wage Payment and Collection Act by AHP (Count II), Justworks (Count III), and Newbery (Count IV). Matricciani's claimed amount in controversy exceeds $75,000. (Dckt. #1 ¶6; *see id.* ¶¶33, 39, 44, 45, 48).

On July 21, 2023, counsel for defendants AHP and Justworks requested that Matricciani arbitrate her claims raised in this matter per the terms of the Worksite Acknowledgment, but she refused. (Dckt. # 16). These defendants filed the motion to compel or dismiss (Dckt. #16), which Newbery thereafter joined (*see* Dckt. #21; Dckt. #23).

## II. DISCUSSION

In the discussion that follows, the Court will first determine whether it has subject matter jurisdiction to adjudicate this matter (it does). Next, it will determine whether the arbitration clause in the Worksite Acknowledgement constitutes a valid and enforceable agreement to

arbitrate (it does); whether it is unconscionable (it is not); and whether the claims Matricciani brings here fall within the scope of the arbitration agreement—specifically, whether the arbitration agreement applies to the subject matter of Matricciani's claims (it does), and which entities are party to the arbitration agreement (Justworks and Newbery are, but AHP is not).

**A. This Court Has Subject Matter Jurisdiction.**

As discussed in its prior order (Dckt. #37), the Court must independently determine whether the diversity and amount in controversy requirements of 28 U.S.C. §1332 are met before resolving the pending motion to compel arbitration. *See Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 787 (7th Cir. 2004). The Court is satisfied that the amount in controversy exceeds the requisite $75,000 (Dckt. #1 ¶¶6, 33, 39, 44, 45, 48), and that citizenship as to all defendants is diverse: specifically, plaintiff in South Carolina, (*Id.* ¶2), defendant Newbury in Illinois, (*Id.* ¶2), defendant AHP in Delaware and Illinois, (*Id.* ¶3), and defendant Justworks in Delaware and New York (*see* Dckt. #38). Because the Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, it proceeds to rule on the motion to compel arbitration. *See Vaden v. Discover Bank*, 556 U.S. 49, 62, (2009).

**B. The Court Grants in Part the Motion to Compel Arbitration.**

The FAA authorizes federal district courts to compel arbitration on a party's motion upon finding (1) a valid, written agreement to arbitrate (evaluated like any contract); (2) a dispute falling within the scope of the agreement, and (3) a refusal to arbitrate,[3] s*ee Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. §4), so long as the court

---

[3] The third prong, refusal to arbitrate, is met by Matricciani's objection to arbitration, undisputedly expressed in her briefing.

would have jurisdiction in the matter independent of the arbitration agreement, 9 U.S.C. §4; *see Vaden*, 556 U.S. 62. A court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C., §3; *see Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011).[4]

### 1. The Worksite Acknowledgment Contains a Valid Agreement to Arbitrate.

Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010) ("The *validity* of a written agreement to arbitrate (whether it is legally binding, as opposed to whether it was in fact agreed to—including, of course, whether it was void for unconscionability) is governed by § 2's provision that it shall be valid "save upon such grounds as exist at law or in equity for the revocation of any contract.") (emphasis in original); *cf. K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (although a court

---

[4] Defendants purport to bring their motion to compel arbitration pursuant to Rule 12(b)(3). (Dckt. #16 at 1). A court may dismiss the case for improper venue under Rule 12(b)(3) "when the arbitration clause requires arbitration *outside the confines of the district court's district*." *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011) (citing 9 U.S.C. § 4) (emphasis added). Although defendants argue that dispute resolution should take place outside federal court, they do not argue that the arbitration should take place outside this District. Therefore, the 12(b)(3) is an improper procedural mechanism for defendants' arguments at this juncture.

must determine a that there was an agreement to arbitrate, an arbitration clause may delegate all

other issues that render a contract voidable, but not void, to the arbitrator).

The Court applies Illinois law to determine whether a valid agreement to arbitrate exists.

See *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705, 711 (7th Cir. 2019).[5] As the

Seventh Circuit explained,

> [When] a "case concerns the application of the Federal Arbitration
> Act," the Illinois Supreme Court has "base[d] [its] analysis upon
> principles of fundamental contract law" to determine the formation
> of an agreement. The court "appl[ies] general contract doctrines" . .
> . [thus], we start by evaluating the standard we must use under
> Illinois law to ascertain the parties' manifestation of mutual assent
> (the proverbial meeting of the minds).  After that, we consider the
> elements of contract formation and whether they exist here to
> create an enforceable arbitration agreement.

*Id*. at 711, *quoting Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 103, 107-08 (Ill. 2006).

Courts in this Circuit apply an evidentiary standard akin to that articulated in Federal

Rule of Civil Procedure 56(e) for summary judgment when determining whether the parties

agreed to arbitrate.  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).  Thus, the party

seeking arbitration must offer evidence sufficient to find the parties' agreement to arbitrate.  *Id*.

Once established, the opposing party must then demonstrate a "genuine dispute of material fact

regarding whether the parties agreed to arbitrate in the first place." *Kass v. PayPal Inc.*, 75 F.4th

693, 700 (7th Cir. 2023).

### a.    The Record Shows Mutual Assent to the Worksite Acknowledgement.

Defendants' assent is not in question, and Matricciani signed the Worksite

Acknowledgement.  (*See* Dckt. #16-1).  A party who signed a contract is charged with

---

[5] The parties agree Illinois contract law governs.  (*See* Dckts. ##16, 24, 25, 26 (citing Illinois law)).

knowledge of, and assent to, its terms. *Melena*, 847 N.E.2d at 108; *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (citing *Melena*); *Davis v. Fenton*, 26 F.Supp.3d 727, 738 (N.D.Ill. 2014) (same). Furthermore, Matricciani's acceptance of payment with wage statements that listed Justworks as "PEO for AHP Servicing LLC," (*see* Dckt. #24, at ¶34, n. 5), evince her assent. *See Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 543 (Ill.App.Ct. 2021) (It is "well settled that a party may, by acts and conduct, indicate assent to the terms of a written contract and become bound by its provisions, even though the party has not signed it.").

### b. The Elements of Contract Formation Were Satisfied as to the Worksite Acknowledgement.

Under Illinois law, "an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena*, 847 N.E.2d at 108 (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)). The Court now applies this principle to the Worksite Acknowledgement.

First, it is undisputed that Justworks gave Matricciani a copy of the Worksite Acknowledgement to sign. This act constitutes an offer. *See Mecherle v. Trugreen, Inc.*, No. 12 C 1617, 2012 WL 4097221, at *4 (N.D.Ill. 2012); *Melena*, 847 N.E.2d at 109. Second, as discussed above, Matricciani's electronic signature of the Worksite Acknowledgement—also undisputed—constituted acceptance thereof. *See Melena*, 847 N.E.2d at 108; *Arbogast*, 194 N.E.3d at 543; *Zhan v. Hogan*, No. 18 C 4126, 2018 WL 9877970, at *8 (C.D.Ill. Dec. 18, 2018) (collecting cases). So does her continued employment, which is also undisputed. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713 (7th Cir. 2019) (collecting cases of Illinois law); *see also Moreno v. Progistics Distribution, Inc.*, No. 18 C 1833, 2018 WL 3659348, at *4 (N.D.Ill. Aug. 2, 2018) ("mere continuation of [the plaintiff's] employment with

[her employer] after being notified of an arbitration program constitutes acceptance and consideration under Illinois law.").

Matricciani challenges the validity of the arbitration agreement by suggesting lack of consideration. However, the Worksite Acknowledgment contains a mutual arbitration provision. (Dckt. #16-1 ¶ 10) ("Worksite Employer and Justworks specifically waive and relinquish their respective rights to bring a claim against you [, Matricciani,] in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent Worksite Employer or Justworks in a lawsuit against you [, Matricciani,] in a court of law."). This mutual arbitration provision, as a mutual waiver of judicial resolution, constitutes consideration. *Melena*, 847 N.E.2d at 110 (citing *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)); *see Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) ("Each party was mutually bound to the arbitration process. Because there was a mutual waiver of the right to bring a civil action, there is adequate mutual consideration in the underlying arbitration agreement."); *Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 623 (Ill.App.Ct. 2000) (same); *Moreno*, 2018 WL 3659348, at *4.

Upon finding offer, acceptance, and consideration as to the Worksite Acknowledgement, the Court is satisfied that a contract to arbitrate was formed.

### c.    Matricciani Has Not Proven Unconscionability.

The Court now turns to whether unconscionability voided that contract so to render it invalid.[6] Matricciani argues that the arbitration agreement is not enforceable, specifically

---

[6] The Worksite Acknowledgment does not delegate issues regarding contract defenses to an arbitrator. (Dckt. #16-1); *see Harris v. FSST Mgmt. Servs., LLC*, No. 22 C 1063, 2023 WL 5096295, at *2 (N.D.Ill. Aug. 9, 2023) ("A court may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive

because it is both procedurally and substantively unconscionable. The party asserting unconscionability bears the burden of proving it. *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 123 (Ill.App.Ct. 2005); *see Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). Matricciani failed to do so.

### i.     The Worksite Acknowledgement is Not Procedurally Unconscionable.

Procedural unconscionability pertains to the circumstances surrounding a transaction including the manner in which the contract was entered into, and whether each party had a reasonable opportunity to understand the terms of the contract. *Keefe v. Allied Home Mortg. Corp.*, 912 N.E.2d 310, 316 (Ill.App.Ct. 2009). Matricciani argues that the Worksite Acknowledgment was procedurally unconscionable because (1) the defendants did not detail the way the plaintiff electronically signed the Worksite Acknowledgement and (2) she does not remember reading it. (Dckt. #24 at 12–14).

Neither argument is persuasive. To begin, plaintiff's first argument that defendants' failure to establish how the Justworks portal process worked in 2021 renders the contract unconscionable fails because the burden to show unconscionability fell to her, not defendants. *See Razor*, 854 N.E.2d 622. Next, Matricciani does not dispute that she electronically signed the Worksite Acknowledgement or that she maintains access to it. She admits that she logged onto Justworks, followed the instructions provided, and signed Worksite Acknowledgment, which she had access to at all relevant times. (Dckt. #24-3, ¶¶ 11-13). Matricciani does not allege that she was rushed in registering for the portal or was denied access to it; she simply argues that she does not remember reading it. This is unavailing because it is well-settled that failure to read a

---

their meaning from the fact that an agreement to arbitrate is at issue.") (cleaned up); *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 252 (2017).

contract before signing is no basis for unconscionability.  *Faulkenberg*, 637 F.3d at 809

("Ignorance of the contract's arbitration provision is no defense if they failed to read the contract

before signing.") (citing *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E.2d 615, 620

(Ill.App.Ct. 1993) ("A party who has had an opportunity to read a contract before signing, but

signs before reading, cannot later plead lack of understanding.")).

### ii. The Worksite Acknowledgement is Not Substantively Unconscionable.

Substantive unconscionability "looks to the fairness of the term itself."  *Montgomery v.*

*Corinthian Colleges, Inc.*, No. 11 C 365, 2011 WL 1118942, at *5 (N.D.Ill. Mar. 25, 2011).

"Contract terms are substantively unconscionable when they are: (1) so one-sided as to be

oppressive; (2) imbalanced in the rights and obligations they impose; and (3) when there is a

significant cost-price disparity, which involves a  comparison of the cost of bringing an

arbitration proceeding versus the damages the plaintiff can expect to receive."  *Id.; see Kinkel v.*

*Cingular Wireless, LLC*, 875 N.E.2d 250, 278 (Ill. 2006).

Matricciani argues that because the Worksite Acknowledgment did not detail the costs

or venue for arbitration, vindicating her rights could possibly be cost-prohibitive.  (Dckt. #24

at 13–14).  The party objecting to arbitration on this ground must "provide some

individualized evidence that it likely will face prohibitive costs in the arbitration at issue and

that it is financially incapable of meeting those costs."  *Livingston v. Associates Finance, Inc.*,

339 F.3d 553, 557 (7th Cir. 2003); *see Davis v. Fenton*, 26 F.Supp.3d 727, 739 (N.D.Ill. 2014).

Matricciani has not met this burden.  Matricciani cites *Green Tree Fin. Corp.-Alabama v.*

*Randolph*, 531 U.S. 79, 91, (2000) for the notion that "large arbitration costs" preclude

litigants from effectively vindicating their statutory rights, however, in that case, like this one,

12

"The risk that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."

Matricciani goes on to declare that the Worksite Acknowledgment is merely a "form template" and "contract of adhesion" that "makes no reference to her actual employment and . . . provides no substantive benefits for her." (Dckt. #24 at 12–13). She cites *Patterson v. Respondus, Inc.*, 593 F.Supp.3d 783, 810 (N.D.Ill. 2022), *reconsideration denied*, 2022 WL 7100547 (N.D.Ill. Oct. 11, 2022) (citations omitted) (A contract of adhesion is "a contract submitted by one party to another on a take-it-or-leave-it basis, without any opportunity to negotiate its terms.")."

Matricciani's unsupported assertions are not enough. She fails to explain how such an omission of "her actual employment"—presumably by listing AHP rather than just AHP Servicing—is oppressively one-sided, imbalanced, or disparate in costs. As discussed above, the mutual agreement to arbitrate serves as consideration. *See Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 623 (Ill.App.Ct. 2000) (a mutual promise to arbitrate is sufficient consideration to support an agreement to arbitrate). The Worksite Acknowledgment provided Matricciani with the right to negotiate changes to its terms, (Dckt. #16-1 ¶11), and it was not a condition of employment, (*id.* at ¶10 ("the execution of this document is not a condition of employment with Worksite Employer")).

Even if it were, the Illinois Supreme Court rejected the argument that a "take-it-or-leave-it" basis renders an agreement unenforceable. *Melena*, 847 N.E.2d at 109-110; *see Johnson v. Orkin, LLC*, 928 F.Supp.2d 989, 1007 (N.D.Ill. 2013) (collecting cases), *aff'd*, 556 Fed.Appx. 543 (7th Cir. 2014). Likewise, "even if [the arbitration agreement] were [a] contract[] of adhesion, that fact alone does not automatically defeat enforceability." *Hanc & Brubaker*

13

*Holdings v. NXT LVL Servs., LLC*, No. 22 C 1526, 2023 WL 1069854, at *4 (N.D.Ill. Jan. 27, 2023) (citing *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 423 (7th Cir. 2015) and *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 266 (Ill. 2006) (observing that contracts of adhesion "are a fact of modern life" and that not "all such contracts are so procedurally unconscionable as to be unenforceable")). Finally, whether the Worksite Acknowledgement was a form contract is immaterial. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010).

In sum, the Worksite Acknowledgement constitutes a valid and enforceable arbitration agreement.

### 2. Matricciani's Disputes with Justworks and Newbery Fall within the Scope of the Arbitration Clause.

The next question is whether the parties' disputes fall within the scope of the arbitration agreement. *Zurich*, 417 F.3d at 687. When the arbitration agreement delegates this determination to an arbitrator, the Court honors that instruction. *See O'Connor v. Ford Motor Co.*, No. 19-cv-5045, 2023 WL 130522, at *4 (N.D.Ill. Jan. 9, 2023) (citing *Henry Schein v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)). Where, as here, the agreement is silent on questions of arbitrability, the Court undertakes this analysis to determine the types of disputes that are subject to arbitration and which entities are party to the arbitration agreement.

### a. The Arbitration Clause Applies to the Subject Matter of Matricciani's Claims.

The Worksite Acknowledgment's arbitration clause expressly states that it applies to "***all disputes*** that may arise between [Matricciani] and Worksite Employer and/or [Matricciani] and Justworks, ***including***, but not limited to, ***disputes regarding termination of employment and compensation***." (Dckt. #16-1 ¶10 (emphasis added)). The Worksite Acknowledgment also states that "included within the scope of this arbitration agreement are all disputes, whether based on

14

tort, contract, statute (including, but not limited to, any claims brought under the Fair Labor Standards Act or any other similar state or local law or regulation . . .), equitable law, or otherwise. *Id*. Each of Matricciani's four counts in the Complaint against the defendants is contractual or statutory and relates to her compensation. (*See* Dckt. #1 (labeling one count as "Breach of Contract" and the other three counts as violations of the IWPCA (820 ILCS 115/2)). Thus, each of Matricciani's claims is within the scope of the arbitration agreement.

> **b. Justworks and Newbery are Parties to the Arbitration Agreement with Matricciani.**

Mattricciani does not dispute that the Worksite Acknowledgement expressly lists Justworks as a party to the agreement. (*See* Dckt. #16 at ¶10 ("This is the entire agreement between you, on the one hand, and Worksite Employer and/or Justworks, on the other hand, regarding dispute resolution . . . ."). The Court therefore finds that defendant Justworks is a party to the Worksite Acknowledgement. As such, plaintiff's claim against Justworks—which pertains to employment and compensation—falls within the scope of the arbitration agreement set forth therein.

Defendants argue that the Worksite Acknowledgement applies to Newberry, an officer for AHP Servicing. Matricciani argues that because her claims against Newbery pertain to his actions as a corporate officer of AHP, Newberry's role as officer of AHP Servicing is irrelevant here. (*See* Dckt. #1 at ¶¶70, 72-74). The Court disagrees with Matricciani.

Defendants are correct. It is undisputed that Newberry served as an officer to both AHP and AHP Servicing. The Worksite Acknowledgement specifically identifies AHP Services as the Worksite Employer. (Dckt. #16-1 ¶ 1 ("Your Worksite Employer is AHP Servicing LLC [address and phone number].")). The Worksite Acknowledgement clearly indicates that it applies to any disputes with "officers" of AHP Services. (Dckt. #16-1 ¶10, Dckt. #16-1 at 7); *Hunt v. Farmers*

*Ins. Exch.*, 831 N.E.2d 1100, 1102 (Ill.App.Ct. 2005) ("It has long been held by Illinois courts that words used in a contract must be given their plain and ordinary meaning.").  Moreover, nothing in the Worksite Acknowledgement qualifies its applicability such that Matricciani could bypass the agreement by purportedly suing Newbery in his capacity with a different company. (*See* Dckt. #16-1).  Therefore, the Court finds that defendant Newberry is a party to the arbitration agreement.  *See Janiga*, 615 F.3d at 743.

Thus, the claim against Newberry—which pertains to employment and compensation— falls within the scope of the Worksite Acknowledgement.

### ii. The Dispute with AHP Falls Outside the Scope of the Arbitration Agreement.

Typically, in Illinois, a nonsignatory to a contract enjoys no right to invoke an arbitration provision contained in that contract.  *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021) (citing *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 755 (Ill.App.Ct. 2000)).  But Illinois law recognizes exceptions to that general rule, under theories involving third-party beneficiaries, agency, and equitable estoppel.  *Id.* (citing *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539–41 (Ill.App.Ct. 2004)); *see also Arthur Andersen v. Carlisle*, 556 U.S. 624, 631 (2009) (explaining "'traditional principles' of state law" generally "allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel'" and applying these principles to an arbitration agreement), *quoting* 21 R. Lord, Williston on Contracts §57:19, p. 183 (4th ed. 2001); *see O'Connor*, 2023 WL 130522, at *3.

a.  **The Third-Party Beneficiary Theory Does Not Apply Here to Bring AHP Within the Scope of the Arbitration Agreement.**

Defendants, who acknowledge that AHP is not a named party to the arbitration agreement, nonetheless assert that AHP is a third-party beneficiary to the agreement.  Illinois recognizes two types of third-party beneficiaries: intended and incidental.  *Hacker v. Shelter Insurance Co.*, 902 N.E.2d 188, 195 (Ill.App.Ct. 2009).  A contract bestows *enforceable* rights to intended beneficiaries but not to incidental ones.  *Id.*  "Illinois courts . . . 'recognize a strong presumption **against** conferring contractual benefits on noncontracting third parties.'"  *Sosa*, 8 F.4th at 639, *quoting Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 117 N.E.3d 1155, 1159 (Ill.App.Ct. 2018) (emphasis added); *see Coatney v. Ancestry.com DNA, LLC*, No. 22-2813, 2024 WL 629858, at *5 (7th Cir. Feb. 15, 2024) (collecting cases) (describing the basis for third-party beneficiary arguments as "shaky legal ground").  To overcome that presumption, as explained by the Seventh Circuit,

> It is not enough to show that the parties know, expect, or even intend that others will benefit from the agreement. Instead, for a nonparty to qualify as a third-party beneficiary, the language of the contract must show that the contract was made for the direct, not merely incidental, benefit of the third person. This intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs.

*Sosa*, 8 F.4th at 639 (quotations omitted) (citing *Marque Medicos Farnsworth, LLC*, 117 N.E.3d at 1159; *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill.App.Ct. 2009)).

Here, the Worksite Acknowledgment states that it applies to "any claim, dispute, and/or controversy that [the plaintiff] may have against Worksite Employer [AHP Servicing] (or its **owners**, directors, officers, managers, employees, or **agents**)…"  (Dckt. #16-1, p. 7, ¶ 10) (emphasis added).  Defendants argue that the record—specifically, the Worksite

Acknowledgment's express listing of "owners" of AHP Servicing, considered alongside the Employment Agreement's express listing of AHP Servicing as a potential affiliate of AHP, Inc.— demonstrates the signatories' clear intent for AHP to benefit from the agreement.  Matricciani contends that the evidence in the record does not show as much.

The Court agrees with Matricciani.  Although the Employment Agreement states, "AHP holds, or expects to hold in the future, the majority equity interests in several businesses. . . . These businesses include AHP Servicing LLC. . . . ." (Dckt. #24-1 at ¶¶ 1, 3.2), the record does not contain evidence that AHP owns AHP Servicing.  Indeed, plaintiff offered evidence to the contrary.  For example, the organizational chart (Dckt. #24-3 at 7) shows that AHP Servicing does not sit under direct control of AHP.  (Dckt. #24-3 at 7).

The record at best suggests that AHP affiliated or intended to affiliate with AHP Services. (*See id.*; Matricciani Decl. at ¶1, Dckt. # 24-3 ("At the time I signed the Executive Employment Agreement with AHP, Inc. [AHP], it had been represented to me by Jorge Newbery, its CEO, that it was his intention to transfer ownership and bring a number of existing businesses under AHP, Inc., which would effectively operate as a parent/holding company of the subordinate businesses."); *see also* Dckt. #36 (stating that AHP "does not have any parent corporation and no public corporation owns 5% or more of its stock," in response to Local Rule 3.2, "Notification as to Affiliates").  The record does not show that this intention was ever effectuated.  Nor does it provide any basis to suggest that the parties intended the terms in the contract like "owners" or "agents" to mean anything other than their ordinary definitions.  *See Sosa*, 8 F.4th 640 ("[The defendant-appellant] offers no evidence of a formal corporate relationship with [the plaintiff-appellee], and it provides no reason to suggest that the parties intended that the term "affiliate," as referenced in the [arbitration agreement] means anything other than its ordinary definition.").  Furthermore,

AHP and Matricciani executed an amendment to their employment agreement after the Worksite Acknowledgment, and this amendment contained no reference to arbitration, the Worksite Acknowledgment, or AHP Servicing at all. (*See* Dckt. #24-2).

Finally, defendants argue that Matricciani essentially admitted that at the time she signed the Worksite Acknowledgment, she assumed that the Worksite Employer was AHP. Indeed, Matricciani asserts that all duties of the Worksite Employer as defined in the Worksite Acknowledgment were performed by AHP and not AHP Servicing (e.g., control over the workplace, day-to-day supervision, determination of compensation, etc.). (Dckt. #16-1 ¶¶ 2, 8, Dckt. #16-1 at 6-7). But this argument misses the mark because it fails to establish that AHP was an intended beneficiary of the Worksite Acknowledgment. *See Sosa*, 8 F.4th at 639 (Under the third-party beneficiary theory, "[a]n individual not a party to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual."); *Coatney*, 2024 WL 629858, at *5–7; *Dannewitz v. Equicredit Corp. of Am.*, 775 N.E.2d 189, 192 (Ill.App.Ct. 2002). In both *Coatney* and *Sosa*, as here, the terms at issue did not state that they were intended for the direct benefit of the party at issue. *Coatney*, 2024 WL 629858, at *7; *Sosa*, 8 F.4th at 639–40.

### b. Defendants Failed to Establish an Agency Relationship to Bring AHP Within the Scope of the Arbitration Agreement.

Defendants' agency argument is underdeveloped. They do not explicitly argue that AHP is an agent of AHP Servicing or that any of the companies are agents of the other. They instead argue that Matricciani's IWPCA claims against Justworks are contingent on an agency relationship between Justworks and AHP. Specifically, they argue that because to prevail on her claim against Justworks, Matricciani must prove that Justworks falls within the definition of an "employer" under the IWPCA, and to do so requires her to prove an agency relationship, "that

brings this matter squarely within the scope of the [Worksite Acknowledgment's] arbitration

provision." (Dckt. #16). This argument also fails. To begin, defendants cite no authority in

support of the proposition that plaintiff has the burden of proving the existence of an agency

relationship at this juncture because a similar burden might be imposed on her later to prove her

claims. Furthermore, defendants have failed to point to evidence in the record sufficient to show

that a principal-agent relationship exists. *See Thompson v. Sutherland Global Services, Inc.*, No.

17 C 3607, 2019 WL 1470238, at *6 (N.D.Ill. Apr. 3, 2019) ("for Defendant to establish a

principal-agent relationship between itself and AT&T, it must show that (1) AT&T had the right

to control Defendant; and (2) that Defendant had the power to affect AT&T's legal

relationships.").

### c. Equitable Estoppel Theory Does Not Bring AHP Within the Scope of the Arbitration Agreement.

Finally, defendants alternatively seek to compel Matricciani to arbitrate her claims

against all parties under a theory of equitable estoppel.

"A claim of equitable estoppel exists where a person, by his or her statements or conduct,

induces a second person to rely, to his or her detriment, on the statements or conduct of the first

person." *Sosa*, 8 F.4th at 641 (citing *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 537 (Ill.App.Ct.

2004)). Applying this concept to the context of compelling parties to arbitrate, including whether

estoppel requires detrimental reliance, is a matter of state law. *Sosa*, 8 F.4th at 637. In Illinois,

the party bringing an equitable estoppel claim "must have relied upon the acts or representations

of the other and have had no knowledge or convenient means of knowing the facts, and such

reliance must have been reasonable," and must prove as much "by clear and convincing

evidence." *Id.* at 641 (holding the defendant "failed to show [the plaintiff] should be equitably

estopped from denying [the defendant's] enforcement of the arbitration provision [in part

because the defendant] failed to present any evidence of its detrimental reliance on any such representation as required by Illinois law"); *see also Hanc & Brubaker Holdings v. NXT LVL Servs.*, LLC, No. 22 C 1526, 2023 WL 1069854, at \*5 (N.D. Ill. Jan. 27, 2023).

Here, defendants do not present any evidence of their detrimental reliance. Instead, they ask the Court to forgo the requirement of detrimental reliance, citing cases applying federal common law, and dicta in the nonprecedential decision in *Snyder v. Jack Schmitt Ford, Inc.*, 2022 IL App (5th) 210413-U, 2022 WL 1197374, at \*10, *appeal denied*, 197 N.E.3d 1075 (Ill. 2022). The Court declines defendants' invitation.

Defendants' reliance on the decision in *Paragon Micro, Inc. v. Bundy*, 22 F.Supp.3d 880 (N.D.Ill. 2014), is misplaced. In that case, the plaintiff had sued a former contractor, with whom the plaintiff had an arbitration agreement, and the contractor's company, with whom the plaintiff did not have an arbitration agreement. *Id*. at 889. The court compelled arbitration as to both defendants on grounds of equitable estoppel upon finding two circumstances under federal common law that authorize it: (1) "when the signatory references to or presumes the existence of a written agreement in asserting its claims against the non- signatory;" and (2) "when the signatory raises allegations of 'substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.'" *Id*. at 889-890. In *Paragon Micro*, the plaintiff's claims arose out of the same agreement that contained the arbitration agreement. *Id*. at 892 ("all of Plaintiff's claims . . . are covered by the arbitration provision because each claim has its origin or genesis in the Agreement.") (cleaned up).

That is not the case here. Defendants say that the Employment Agreement, i.e., the contract that forms the basis for the plaintiff's breach of contract claims against AHP, provides the same contractual requirements forming the basis of the plaintiff's IWPCA claims against the

other defendants, Justworks and Newberry. Indeed, the Employment Agreement is the basis of Matricciani's claims, but it does not contain the arbitration agreement at issue; instead, the arbitration agreement is in the Worksite Acknowledgment, to which AHP is not a party.

Furthermore, there is no allegation here of concerted misconduct, as was the basis for the other avenue of estoppel in *Paragon Micro*. Likewise, in *Hoffman v. Deloitte & Touche, LLP*, 143 F.Supp.2d 995, 1004–05 (N.D.Ill. 2001), the decision turned on "allegations of . . . concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," which is missing from this case. For another example of federal common law, defendants cite *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981), which Illinois courts have declined to adopt, *see e.g., Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 542 (Ill.App.Ct. 2004).

In any event, the Seventh Circuit's decision in *Sosa* controls. *Sosa*, 8 F.4th at 637, 642 (subsequently holding that equitable estoppel must be analyzed under state contract law, noting that "the Illinois Supreme Court has reaffirmed its longstanding detrimental reliance standard in equitable estoppel claims") (citing *In re Scarlett Z.-D.*, 28 N.E.3d 776, 785 (Ill. 2015)); *see also Hanc & Brubaker Holdings v. NXT LVL Servs., LLC*, No. 22 C 1526, 2023 WL 1069854, at *5 (N.D.Ill. Jan. 27, 2023).

Defendants thus argue that although at the time of *Sosa*, the Illinois Supreme Court had not yet recognized a basis for estoppel involving substantially interdependent and concerted misconduct without detrimental reliance, dicta in *Snyder,* 2022 WL 1197374, at *10, suggests that it might. Defendants posit that the Illinois appellate court in *Snyder* did not undertake the alternative estoppel analysis because it merely addressed whether to compel a non-signatory to the agreement to arbitrate, as opposed to the signatory to the agreement, and, unlike the party

opposing arbitration in *Snyder* who had not agreed to arbitrate any claims with anyone, Matricciani agreed to arbitrate employment claims with some parties. The Seventh Circuit in *Coatney* rejected another argument that the *Snyder* court also considered but ultimately rejected, that of direct benefits estoppel. *See Coatney* 2024 WL 629858, at *10 (discussing *Snyder,* 2022 WL 1197374, at *6–10). The *Coatney* court was clear: "[w]hen presented with two equally plausible readings of state law," a federal court interpreting state law "should not choose the alternative that requires it to predict a change or an expansion in extant state legal doctrine." 2024 WL 629858, at *3, *quoting Green Plains Trade Group, v. Archer Daniels Midland Co.*, 90 F.4th 919, 929 (7th Cir. 2024). Thus, even if AHP's preferred reading here were equally plausible, it remains expansive, so this Court cannot adopt it.

Ultimately, the Seventh Circuit in *Sosa* held that detrimental reliance is required, and Illinois law has not since held otherwise. Therefore, because defendants have not argued detrimental reliance, they have failed to establish a viable equitable estoppel claim.

* * *

For these reasons, the Court finds that plaintiff's claims against defendants Justworks and Newberry are within the scope of the arbitration agreement, but defendant AHP failed to establish that it was a third-party beneficiary or that it qualified to enforce the agreement under the theory of equitable estoppel. Thus, the Court is unpersuaded that Matricciani's claim against AHP falls within the scope of the arbitration agreement.

* * *

In sum, because defendants have established that Matricciani agreed to arbitrate claims against Newbery and Justworks alleged in her complaint, the Court compels Matricciani to arbitrate her disputes with respect to these two defendants (Counts 3 and 4 of the Complaint). In

23

the interim, these claims are stayed pursuant to 9 U.S.C. §3. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011). Because defendants failed to establish that Matricciani's disputes with AHP fall within the scope of the arbitration agreement, the Court declines to order Matricciani to arbitrate with AHP. The Court, in its discretion, also stays the claims asserted against AHP in Counts 1 and 2 pending the arbitration on the related claims against Newbery and Justworks. *See, e.g., Volkswagen of Am., Inc. v. Sud's Of Peoria*, 474 F.3d 966, 971-72 (7th Cir. 2007); *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 22 C 1422, 2023 WL 8827946, at *5 (N.D.Ill. Dec. 21, 2023).

### III.      CONCLUSION

For all the reasons stated above, defendants' motion to compel arbitration and stay the underlying proceedings pending the completion of the arbitration (Dckt. #16), is granted in part. The Court compels Matricciani to arbitrate her disputes with respect to Newbery and Justworks (Counts 3 and 4 of the Complaint). All claims – including those asserted against AHP – are stayed pending the completion of this arbitration. The parties shall submit a joint status report within twenty-one (21) days of the arbitration decision. IT IS SO ORDERED.

**Date: February 22, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**

24